**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DONALD R. PEVIA,            *

Plaintiff                *

v                      *          Civil Action No. ELH-14-0631

BOBBY P. SHEARIN,         *

Defendant            *
                         *
                  ***

<u>**MEMORANDUM**</u>

Plaintiff Donald R. Pevia, a self-represented inmate incarcerated at North Branch Correctional Institution ("NBCI"), has sued former Warden Bobby Shearin, asserting that his right to practice his chosen religion under the First Amendment was abridged by defendant when he was denied the opportunity to participate in Native American ceremonial worship. Defendant has moved for dismissal or summary judgment (the "Motion"). ECF 12. Plaintiff opposes the motion. ECF 14.[1] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendant's motion, construed as a motion for summary judgment, shall be DENIED.

**I.  Factual Background**

Pevia alleges that he made informal efforts to have Native American worship services instituted at NBCI, but was unsuccessful. He was then advised by unidentified correctional staff that Warden Shearin would not permit Native American services at NBCI, as the service

---

[1] Plaintiff was sent a letter on August 4, 2014, advising him of his right to respond to the Motion and to submit exhibits. *See* ECF 13. Plaintiff's opposition is entitled "Motion for Summary Judgment." ECF 14. It is supported by a memorandum and an exhibit. However, it is, in fact, an opposition to the defendant's dispositive motion. In any event, for the reasons that follow, plaintiff's motion (ECF 14) will be denied.

required the use of ceremonial tobacco.  ECF 1 at 3.[2]  Pevia also states that he learned from another inmate that in order to obtain approval for Native American services, at least 8 inmates must be willing to participate.  *Id.*

Pevia filed an inmate grievance, *id.*, which is known as an Administrative Remedy Complaint ("ARP").  In his ARP, Pevia indicated that he did not need to conduct services with other Native Americans; he could perform the ceremony himself. He asked for the following ceremonial items: sage bowl; sage; ceremonial tobacco and pipe; eagle, turkey, owl, raven feathers; four rocks for the north, east, south, and west gates; and four colors to paint the rocks red, black, white, and yellow.  He asked that Native American service be instituted and he be given a service and study day. ECF 12-2, Ex. 1 (ARP) at 4.

Pevia also alleges that he personally made his request to Shearin, and told Shearin that he is a registered Native American, as is his entire family.  He also described his experiences conducting ceremonial services and pow wows.  ECF 1 at 3-4.  Nevertheless, Shearin disregarded Pevia's request and refused to institute Native American services.  *Id.* at 4.

Defendant indicates that NBCI is Maryland's highest security prison, housing many inmates who have "demonstrated a propensity for violence and assaultive behavior, along with an inability or unwillingness to conduct themselves according to rules and regulations of the system." ECF 12-1, Memorandum at 4.

Defendant offers that Pevia filed ARP NBCI-1683-13 on June 22, 2013, complaining that NBCI was violating his right to practice his Native American religion.  ECF 12-2, Ex 1 at 3-4; ECF 12-3, Ex. 2, Declaration of Warden Frank Bishop, at ¶ 4..  Kevin Lamp, Administrative Chaplain, investigated the ARP on July 22, 2013.  ECF 12-2 at 6; ECF 12-3 at ¶ 5.  Lamp

---

[2] The citations to page numbers are to the page numbers generated by the court's electronic docketing system.

recommended dismissal of the ARP, because Native American religious services require meeting on a grass or dirt location within the compound of NBCI.  Lamp stated that, due to the architectural structure of NBCI, the only available natural surfaces are in areas that would create security concerns.  ECF 12-2 at 6; ECF 12-3 at ¶ 5.  Shearin reviewed the ARP and dismissed it on July 23, 2013, citing the limited available outdoor natural surface at the NBCI compound, which presented security concerns.  ECF 12-2 at 5; ECF 12-3 at ¶ 6.

Plaintiff filed a Headquarters Appeal on July 29, 2013.  ECF 12-2 at 9-10; ECF 12-3 at ¶ 7.  The DOC Commissioner responded: "Your appeal has been investigated and is hereby meritorious.  The Warden is instructed to adequately accommodate the religious requirements of the Native American Faith Group.  No further action will be taken through the ARP process." ECF 12-2 at 13; *see also* ECF 12-2 at 11-15; ECF 12-3 at ¶ 7.[3]  On October 15, 2013, apparently unaware of the Commissioner's findings, Pevia filed a grievance with the Inmate Grievance Office ("IGO").  ECF 12-2 at 14; ECF 12-3 at ¶ 8.  The Administrative Law Judge ("ALJ") dismissed the case as "moot" on March 27, 2014, because Pevia's claim had already been found meritorious.  But, the ALJ noted that any complaint as to the adequacy of NBCI's response to the Commissioner's decision would be the subject of a new grievance and subject to the exhaustion requirements of the ARP process.  ECF 12-2 at 14-15; ECF 12-3 at ¶ 7.

Pevia filed ARP NBCI-4546-13 on December 23, 2013, complaining that the Commissioner's order was not implemented and that he continued to be denied access to Native American services.  ECF 12-2 at 22-23.  The ARP was dismissed on January 7, 2014, with a finding that options were being reviewed to locate an appropriate location on NBCI grounds to

---

[3] Warden Bishop indicated in his Declaration, ECF 12-3 at ¶ 7, that the determination was made on October 3, 2013, by Randy Watson, Director for Programs and Services.  However, Administrative Law Judge Judith Jacobson stated in her decision that the determination was made by the "DOC Commissioner."  *See* ECF 12-2 at ¶ 12-13.  The discrepancy is not material.

hold the religious services.  Pevia was directed to talk to his Housing Unit Manager if he had further questions.  *Id*.  Pevia did not appeal the dismissal.  Pevia indicates he did not appeal because he attempted, as directed, to resolve the issue with staff who reported to him that they were in the process of establishing the Native American service.  ECF 14-1, Memorandum at 4.

Chaplain Lamp contacted the Iron House Council in March 2014, in an effort to establish a connection with the organization to facilitate Native American services at NBCI.  ECF 12-2 at 16-19; ECF 12-3 at ¶ 9.  On May 27, 2014, members of the Council conducted the first Native American service at NBCI.  ECF 12-2 at 19-21; ECF 12-3 at ¶ 10.  The services were repeated on June 10 and 24, 2014, and were scheduled to continue regularly, depending upon the availability of the Iron House Council. ECF 12-3 at ¶ 10.

In his response, Pevia indicates that, since the establishment of Native American services at NBCI in May of 2014 to the date of his response, August 6, 2014, he was not permitted to participate in any of the Native American services.  ECF 14-1 at 4.  He indicates that only inmates housed in the "honor buildings" are permitted to participate in the Native American services.  He states that he is housed in Housing Unit 2, where inmates must watch religious services on the television, but Native American services are not part of the services aired weekly. *Id*.  Pevia indicates that in his ARP he requested a television and that the Native American service be placed on the service list to be broadcast.  *Id*.; *see also* ECF 12-2 at 23.  Pevia reiterates his claim that he has been denied the opportunity to practice his religion for over one year and requests injunctive relief, compensatory damages, and punitive damages.  ECF 1 at 5.

In further support of his claim, Pevia has provided the Declaration of inmate Kenneth L. Trice.  *See* ECF 14-2.  Trice avers that for five years he has endeavored to start a Native American religious service at NBCI, *id*. at 1, but has encountered one "roadblock after another."

*Id.* at 2.  Trice states that he is housed as a general population inmate on Housing Unit 2 and is free to move about the institution, but has never been permitted to attend a Native American service.  Moreover, Trice avers that NBCI does not have a Native American religious service.[4] *Id.*

## II.  Standard of Review

Defendant's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF 12.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

---

[4] Trice's civil rights complaint regarding denial of Native American services at NBCI is presently pending before another judge of this court.  *See Trice v. Shearin*, Civil Action No. JKB-14-64 (D. Md.).

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ.

(stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

6

P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary"

and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). But, he filed a motion asking the court to hold the Motion in abeyance, indicating that he could not adequately respond to the defendant's dispositive motion without additional assistance and unspecified discovery. ECF 16. His motion was not accompanied by an affidavit or declaration. Moreover, plaintiff failed to explain how discovery would aid him in responding to the dispositive motion. Accordingly, I denied plaintiff's motion. ECF 17. Nevertheless, plaintiff filed his own motion for summary judgment (ECF 14), supported by a declaration of a fellow inmate.

In light of the foregoing, I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment, because this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a). It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.,* 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Moreover, the court may not make credibility determinations on summary judgment. *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis,* 290 F.3d at 644-45.  Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See, e.g.*, *Boone v. Stallings*, ____ Fed. App'x. ____, No. 14-6521 (4th Cir. Sept. 11, 2014) (per curiam).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248.  On the other hand, summary judgment is appropriate

if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation*, 477 U.S. at 323–24).

### III.   Discussion

### A.      Failure to Exhaust Administrative Remedies

The court must first examine defendant's assertion that Pevia's claims should be dismissed due to Pevia's failure to exhaust available administrative remedies. The Prisoner Litigation Reform Act provides, in pertinent part, 42 USC § 1997(e):

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). If the defendant has made a showing of failure to exhaust by the plaintiff, the plaintiff must show that he has satisfied the administrative exhaustion requirement under the PLRA, or that the defendant forfeited his right to raise non-exhaustion as a defense. Failure to do so could lead to dismissal. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an administrative remedy procedure "available" to Maryland state prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq.* Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." Code of Maryland Regulations ("COMAR") 12.07.01.01B(8).[6]

---

[6] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for

In the Maryland correctional system, if the particular institution in which an inmate is incarcerated provides an administrative remedy procedure, the inmate must complete the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D.

Filing a request for administrative remedy with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure process provided by the Division of Correction ("DOC") to its prisoners. If the Warden's decision is not satisfactory to the inmate, the prisoner has ten calendar days to file an appeal with the Commissioner of DOC. COMAR 12.07.01.04B. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office. *See* COMAR 12.07.01.03; 12.07.01.05.B; *see also* C.S. § 10-206. Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.06B(6). The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the matter is transmitted for a hearing to be conducted by an

---

public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208(c); COMAR 12.07.01.03B(8); 12.07.01.07A.  The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement.  *See, e.g., Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions.  *See Porter v. Nussle, supra,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  If defendant shows that a claim is subject to the ARP process but has not been exhausted, the court may not consider the merits of the claim.  *See Jones v. Bock*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.

Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative remedies must, however, be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit has addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Here, Pevia's appeal of the dismissal of his ARP was found meritorious by the Commissioner. Thereafter, he need not have filed his grievance with the IGO, which ultimately

14

dismissed his claim as moot given his success before the Commissioner.  Pevia's claim regarding the wholesale failure to provide him with Native American services has been fully exhausted, notwithstanding the ALJ's directive that complaints regarding the implementation of Native American services be subjected to a new ARP process, and Pevia's second effort to grieve the issue of his not having access to services.

I note that, in granting the appeal, the Commissioner specifically stated: "No further action will be taken through the ARP process."  ECF 12-2 at 13.  At the very least, the directives Pevia received regarding complaints as to the implementation of Native American services from the Commissioner and the ALJ were confusing, if not misleading, as to the necessity of his re-grieving issues concerning his access to services.  It is clear that Pevia exhausted the remedies that were "available" to him.  Accordingly, Pevia's complaint is not subject to dismissal for failure to exhaust administrative remedies.

### B.      Free Exercise Claim and Mootness

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  But, with respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs, without concern for the possibility of punishment.  *See Turner v. Safley,* 482 U.S. 78, 89 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  That retained right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution.  *See Turner v. Safely*, 482 U.S. at 89-91.

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question.

In addition, this court must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. *Id*.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  The act provides, in part, 42 U.S.C. § 2000 cc-1(a):

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

Religious observances need not be uniform to merit First Amendment protection.  *See Morrison v. Garraghty*, 239 F. 3d 648, 659 (4th Cir. 2001; *see also Dettmer v. Landon*, 799 F. 2d 929, 932 (4th Cir. 1986) (prison officials may not deny religious articles to Wiccans based on officials' definition of what constitutes a religion).  "Courts are not arbiters of scriptural interpretation."  *Thomas v. Review Bd*, 450 U.S. 707, 714 (1981).  Moreover, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."  *Id*. at 714.  Nonetheless, where there is a legitimate security concern at issue, such as insuring compliance with rules of behavior during worship services, temporary suspension of attendance at congregate worship does not violate the First Amendment.  *See Turner*, 482 U.S. at 89-91 (1987) (restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution).

Defendant maintains that plaintiff's claim is moot as Native American services have now been implemented at NBCI.  Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies."  *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477 (1990)

(citations omitted).  A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287(2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937); *see also Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941).

Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).  Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use.  *See, e. g., Tawwab v. Metz*, 554 F.2d 22 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413 (9th Cir. 1976); *Shimabuku v. Britton*, 503 F.2d 38 (10th Cir. 1974); *Locke v. Board of Public Instruction*, 499 F.2d 359 (5th Cir. 1974); *Wilkinson v. Skinner*, 462 F.2d 670 (2d Cir. 1972*); Uzzell v. Friday*, 401 F.Supp. 775 (M.D.N.C. 1975), aff'd in pertinent part, 547 F.2d 801 (4th Cir. 1977); *Rappaport v. Little League Baseball, Inc*., 65 F.R.D. 545 (D. Del. 1975).

Although defendant maintains that Native American services have been instituted at NBCI, plaintiff refutes several of defendant's contentions concerning the establishment of Native

American services as well as his ability to participate in same.  Principally, he notes that he is entirely unable to participate in Native American services, and claims that his requests to have services broadcast to him have been ignored.  Further, plaintiff, through Trice, avers that there are in fact no regularly scheduled Native American services held at NBCI.   Defendant has failed to respond to these assertions.  As such, I can make no finding, on the record before me, as to the mootness of plaintiff's claim.

In light of the foregoing material disputes of fact, the pending motions for summary judgment shall be denied.  A separate Order follows, to include the schedule that shall govern this case.[7]

February 24, 2015                          _____/s/_____
Date                                                 Ellen Lipton Hollander
                                                         United States District Judge

---

[7] The determination of whether defendants are entitled to qualified immunity is more appropriately addressed after the facts of the case have been developed and a determination has been made as to whether Pevia has suffered a violation of his constitutional rights.  Accordingly, dismissal of Pevia's complaint based on qualified immunity is not proper at this time.